**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

RICHARD CRUZ,

        **Petitioner,**

v.

        **Civil Action No. 1:09cv60
Criminal Action No. 1:07cr68
(Judge Keeley)**

UNITED STATES OF AMERICA,

        **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On May 11, 2009, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1] Petitioner filed a Memorandum in Support of his § 2255 motion on June 3, 2009.[2] The Government filed its response on July 14, 2009.[3] After his request for an extension of time in which to reply was granted, petitioner filed his reply on August 3, 2009.[4]

### II. Facts

#### A. Conviction and Sentence

On November 6, 2007, petitioner signed a plea agreement, agreeing to plead guilty to two counts from an eight-count superseding indictment; Count 7, possession with intent to distribute

---

[1] Dkt.# 286

[2] Dkt.# 292.

[3] Dkt.# 297.

[4] Dkt.# 303.

cocaine and marijuana, in violation of Title 21, U.S.C. § § 841(a)(1) and 841(b)(1)(C), and Count

8, use of a firearm during and in relation to a drug trafficking crime in violation of Title 18, U.S.C.

§ 924(c)(1).[5] The maximum penalty for his plea to Count 7 was specified as imprisonment for a

period of not more than twenty (20) years, a $1,000,000.00 fine. (Id. at 1). The maximum penalty

for his plea to Count 8 was specified as imprisonment for at least five (5) years and no more than

life, a fine of $250,000.00, and a term of supervised release not to exceed three years, for a total

penalty as to the pleas to both counts of not less than five (5) years and up to life, a fine of

$1,250,000.00, a term of supervised release of at least three (3) years. (Id. at 2). Petitioner also

agreed to a forfeiture of certain property seized incident to a search of his residence, pursuant to a

federal search warrant. (Id.). The parties stipulated and agreed that petitioner's total drug relevant

conduct was between five (5) and fifteen (15) kilograms of cocaine. (Id. at 5). In the plea

agreement, the petitioner waived his right to appeal and to collaterally attack his sentence.

Specifically, the agreement states:

> 12. Mr. Cruz is aware that Title 18, United States Code, Section 3742 affords a
> defendant the right to appeal the sentence imposed. Acknowledging all this, the
> defendant knowingly waives the right to appeal any sentence within the maximum
> provided in the statute of conviction (or the manner in which that sentence was
> determined) including any enhancements under Section 4B1.1 of the Guidelines, on
> the grounds set forth in Title 18, United States Code, Section 3742 or on any ground
> whatever, in exchange for the concessions made by the United States in this plea
> agreement. The defendant also waives his right to challenge his sentence or the
> manner in which it was determined in any collateral attack, including, but not limited
> to, a motion brought under Title 28, United States Code, Section 2255. If the Court
> departs upward or downward from the advisory guideline range, the party opposing
> the departure has the right to appeal the departure. However, neither party has the
> right to appeal the Court's denial of either an upward or downward departure.
> Otherwise than stated herein, in exchange for the defendant's waiver, the United
> States waives its right to appeal. The parties have the right during any appeal to

---

[5] Dkt.# 149.

argue in support of the sentence.

(Id. at 5).

On January 25, 2008, the petitioner, then aged 29 and having obtained a GED, entered his plea in open court. (Dkt.# 296 at 11 - 12). Petitioner testified that he could read, write and understand English; denied having taken any medication, drug or alcohol within the previous 24 hours; denied any visual, auditory or cognitive impairment; and denied any recent treatment for mental illness or drug addiction. (Id. at 12 - 13). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the paragraph 12 *supra*. (Id. at 5 - 7). The Court specifically asked petitioner if he understood the waiver of his appellate and post-conviction relief rights and petitioner indicated that he did. (Id. at 17 and 35). The Court asked petitioner whether he and his counsel had reviewed the plea agreement in detail before he signed it, and petitioner stated that they had. (Id. at 21).

The Court then informed petitioner that the maximum sentence for the crimes which he was pleading would be imprisonment for a minimum period of five years to life, and a term of at least three years of supervised release (Id. at 5, 25, and 29 - 32), but that the ultimate sentence could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 17, 22 - 23, 30, 31, 33 - 34, and 47). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the pre-sentence report (PSR) was completed and petitioner indicated his understanding of that fact. (Id. at 23, 31, and 33). The Court specifically stressed with petitioner that the statutes governing the two charges that he was pleading to, possession with intent to distribute cocaine and marijuana, and use of a firearm in relation to drug trafficking crimes, have consecutive penalties, and petitioner said "Yes, Your Honor." (Id. at 30).

3

The Court then summarized the rights that petitioner was giving up by pleading guilty. (Id. at 29 and 36 - 40). To establish a factual basis for the plea, the Government presented the testimony of Detective P.J. Scott, a Morgantown, WV police officer assigned to the Mon Valley Drug Task Force and Drug Administration Task Force. (Id. at 41 - 45). The petitioner did not contest the factual basis of the plea. In fact, when asked if he challenged or disagreed in any way with the witness' testimony, he testified "I can't contest - - yes, Your Honor." When the Court inquired further, as to whether he disputed the witness' factual testimony, petitioner replied "No, Your Honor." (Id. at 46).

After the factual basis for the plea was presented, the petitioner entered his plea. The Court asked petitioner if he was, in fact, guilty of Counts Seven and Eight of the superseding indictment and petitioner advised the Court that he was. (Id. at 47). The Court asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (Id. at 20). The Court further asked petitioner whether he thought that there was any thing he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner stated "[n]o, Your Honor." (Id.). At the conclusion of the hearing, the Court determined that: petitioner was competent; he had made his plea freely and voluntarily, with full understanding of its consequences; and that he understood the statutory maximum and minimum penalties he was subjected to by virtue of his pleas. (Id. at 48). Petitioner did not object to the Court's finding.

On May 12, 2008, petitioner appeared before the court for sentencing. Petitioner was found to have a base and adjusted offense level of 32 with a two-level reduction for acceptance of responsibility. (Dkt.# 305 at 9 - 10). An additional one-level reduction was granted, resulting in an total offense level of 29. (Id.). With a criminal history category of III, the Court found that the sentence guidelines called for a mandatory minimum of one hundred eight to one hundred thirty-five

months imprisonment for Count Seven, and sixty months imprisonment for Count Eight, to run consecutively. (Id. at 10). The range of supervised release was three to five years per count, to run concurrently. (Id.). The Court then heard argument from counsel. Defense counsel's one objection related to petitioner's criminal history points calculation had already been mooted. (Id. at 5 - 7). Counsel asked the Court to impose a sentence less than the one hundred sixty-eight months[6] [sic] it was contemplating, asking for one hundred and eight months on Count Seven, the lowest end of the guideline, which, when coupled with the consecutive sixty months for the gun charge, would result in a total sentence of one hundred sixty-eight months, or fourteen years. Counsel further asked for the Court's leniency in light of petitioner's efforts at bettering himself,[7] asking the Court for "something less than fourteen years." (Id. at 12 -13). Petitioner invoked his right of allocution, apologizing for his mistakes and asking for leniency so that he could return to live a productive life with his children. (Id. at 13 - 14). The Government asked for a sentence at the lower end of the Guideline. Taking all necessary information into consideration, the Court sentenced petitioner to serve a total term of 168 months imprisonment on the two counts.[8] (Id. at 10).

**B.**     **Direct Appeal**

Petitioner did not file a direct appeal.

**C.**     **Federal Habeas Corpus**

---

[6] Presumably counsel meant to say "the one hundred and ninety-five months the Court contemplates," as the highest end in the Guideline range for Count Seven would be one hundred thirty-five months, which, coupled with the consecutive sixty months sentence for Count Eight, would be one hundred ninety-five months.

[7] Counsel noted that petitioner was completing the process for a GED and attending anger and stress management counseling.

[8] Petitioner's consecutive sentences were 108 months for Count Seven, the lowest end of the guideline range, and the statutorily-required minimum 60 months for Count Eight.

**Petitioner's Contentions (Dkt.# 286 and 292)**

Petitioner raises five grounds in his § 2255 motion:

1) the Government included materially inaccurate statements as to sentencing factors in the plea agreement;

2) petitioner's waiver of appellate rights was not knowing, because he relied on the Government's inaccurate facts;

3) the District Court was misled by the Government's materially inaccurate information as to the sentencing factors applicable to petitioner;

4) petitioner's consecutive sentence was not authorized by statute; and

5) counsel was ineffective for persuading him to plead guilty based on materially inaccurate facts.

Petitioner states that he did not bring his claims previously because he was misled by everyone involved. He states that because of this, his waiver was not knowing "and I now wish to excercise [sic] all my rights." (Dkt.# 286 at 4). He requests as relief that: 1) a resentencing hearing be held using "truthful and accurate sentencing facts;" 2) his five-year consecutive sentence on the gun charge be vacated and reinstated to run concurrent with his drug sentence; and 3) the prosecutor be sanctioned for misleading the Court regarding the applicable sentencing factors. In the alternative, he requests that he "be permitted to reconsider his options and his original guilty plea in the presence and with the guidance of competent counsel after being provided with full discovery "Brady" material," or at the very minimum, he should be granted an evidentiary hearing to address all the facts and develop the record. (Dkt.# 292 at 1 - 2).

**Government's Response (Dkt.# 297)**

The Government contends that petitioner knowingly and voluntarily waived his right to bring a § 2255 motion. Further, the Government argues, none of petitioner's claims have any merit, as they lack factual and legal support. Since the Government, the probation office, defense counsel and the District Court were absolutely correct in their understanding, explanation and application of the law, defense counsel cannot be found ineffective for accurately advising petitioner as to the penalty he faced.

### Petitioner's Reply (Dkt.# 303)

Petitioner refutes the Government's response by reiterating his § 2255 motion claims, contending that the statement of facts in the Government's response is contradictory. He denies that he ever admitted, or ever was told at the Rule 11 hearing that the Government would have to prove his guilt beyond a reasonable doubt. He concurs with the Government's position that all of his issues can be addressed on legal grounds. However, as a *pro se* layperson, petitioner asserts that he is having difficulty with the questions of law raised. He enumerates a list of issues and questions raised, and requests that the Court appoint counsel on his behalf to address them.

**D.**   **Recommendation**

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction.

### III. Analysis

**A.**   **Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United

States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

## B. Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible

factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v.

Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F.

Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims

available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-

attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v.

Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358

F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits

to have confronted this question "have held that collateral attacks claiming ineffective assistance of

counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not

relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007

U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 296 at 17 - 18 and 35). Further, petitioner specifically testified that he understood that, incident to his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if it was within the statutory maximum of at least five years or up to life. (Id. at 30). Further, he testified that he understood that his sentences for the two counts must be consecutive and not concurrent. (Id.). His sentence was 108 months imprisonment on Count Seven and 60 months imprisonment on Count Eight, for a total sentence of 168 months. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his sentence and to file this § 2255 motion, thus precluding a review of the merits of its claims.

## V. <u>Recommendation</u>

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING this case with prejudice**.

Further, petitioner's request for an evidentiary hearing should be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to file

timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: ~~September~~ *November* ___/___, 2010

/s/ *[signature]*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE